### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

**AARON M. HANNA(legal name) Formerly,**
**TIMOTHY A. HINKHOUSE**                              )
          v.                                           )
                                      )    **COMPLAINT**
                                      )    **Civil Action No.**_2:21-cv-00493-YY_____
**COLETTE PETERS**                                    )
**TYLER BLEWETT**                                     )
**LIEUTENANT ROBINSON**                               )
**SEARGENT IRVING**                                   )
**OFFICER PLOURD**                                    )
**OFFICER H. COCHELL**                                )
**OFFICER CARRILLO**                                  )
**OFFICER NIELSEN**                                   )
**OFFICER DAVIS**

## I.JURISDICTION AND VENUE

1.  This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under the color of state law, of rights secured by the Constitution of the United States. The court jurisdiction under 28 U.S.C., Section 1331 and 1343 (a) (3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C., Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C,, Section 2283 and 2284 and rule 65 of the Federal Rules of Civil Procedure.

2.  The Portland Division is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to the claim occurred.

## II. PLAINTIFF(S)

3.  Plaintiff **AARON M. HANNA** Formerly, TIMOTHY ALAN HINKHOUSE, is and was at all times mentioned herein a prisoner of the State of Oregon in the custody of the Oregon Department of Corrections. He is currently confined in the Two Rivers Correctional Institution.

## III. DEFENDANTS

4.  Defendant Colette Peters is the Director of the Oregon Department of Corrections. She is legally responsible for the overall operation of the department and each institution under its jurisdiction, including the Two Rivers Correctional Institution where the Plaintiff is confined.

5.  Defendant Tyler Blewett is the Superintendent of the Two Rivers Correctional Institution. He is legally responsible for the operation of the Two Rivers Correctional Institution and for the welfare of all the inmates in this prison.

6.  Defendant Robinson is a correctional officer at the Oregon Department of Corrections who, at all times mentioned in this complaint  held the rank of lieutenant and was assigned to the Two Rivers Correctional Institution.

7.  Defendant Irving is a correctional  officer at the Oregon Department of Corrections who, at all times mentioned in this complaint held the rank of Sargent and was assigned to the Two Rivers Correctional Institution.

8.  Defendant Plourde is a correctional officer at the Oregon Department of Corrections who, at all times mentioned in this complaint held the rank of officer and was assigned to the Two Rivers Correctional Institution.

9.  Defendant H. Cochell is a correctional officer at the Oregon Department of Corrections who, at all times mentioned in this complaint held the rank of officer and was assigned to the Two Rivers Correctional Institution.

10.  Defendant Carrillo is a correctional officer at the Oregon Department of Corrections who, at all times mentioned in this complaint held the rank of officer and was assigned to the Two Rivers Correctional Institution.

11.  Defendant E. Nielsen is a correctional officer at the Oregon Department of Corrections who, at all times mentioned in this complaint held the rank of officer and was assigned to the Two Rivers Correctional Institution.

12.   Defendant Davis is a correctional officer at the Department of Corrections who, at all times mentioned in this complaint held the rank of correctional officer and was assigned to the Two Rivers Correctional Institution.

13.   Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under the color of law. At all times mentioned in this complaint each defendant also acted in their individual capacities to violate plaintiff's Constitutional Rights under Federal Rules of Court Procedure 17 (b) (1).

14. Each defendant working for the Oregon Department of Corrections has to observe DOC Policy: 20.1.1 "Department Mission, Vision, and Values. Reading the "Vision, Operating Safe Facilities, We are innovative leaders who take pride in the work we do and the service we provide. We use proven practices to encourage and maintain a positive, safe, and healthy workplace."

15.   Each defendant that was hired on to the Oregon Department of Corrections had to sign and date a form called **"CODE OF ETHICS."** This form can be found in the **DOC Policies and Procedures Manual, DOC Policy 20.1.2**. The form says the following:"As an employee of the Oregon Department of Corrections, I will value and maintain the highest ideals of professional and compassionate public service by respecting the dignity, cultural diversity and human rights of all persons, and protecting the safety and welfare of the public. **I ACCEPT THAT MY FUNDAMENTAL DUTY IS TO SERVE THE PUBLIC; TO SAFEGUARD LIVES AND PROPERTY, TO PROTECT DEPARTMENT OF CORRECTIONS INCARCERATED PERSONS** against deception, oppression or intimidation, violence or disorder. **I WILL BE CONSTANTLY MINDFUL OF THE WELFARE OF OTHERS**. To the best of my ability, I will remain calm in the face of danger and maintain self restraint in the face of scorn or ridicule. **I WILL BE HONEST AND TRUTHFUL. I WILL BE EXEMPLARY IN OBEYING THE LAW, FOLLOWING THE REGULATIONS OF THE DEPARTMENT, AND REPORTING DISHONEST OR UNETHICAL CONDUCT**. I acknowledge that I have been selected for a position of public trust and I will constantly strive to be worthy of that trust and to be true to the mission and values of the Department of Corrections."

16.   Each defendant working for the Oregon Department of Corrections must follow and adhere to

**DOC Policy 20.1.3 "Code of Conduct" III. Policy:** "Every employee of DOC shall constantly strive to attain the highest standards of conduct and professional public service. This requires employees be faithful to the principles of providing professional services, adhering to the Code of Ethics and meeting the vision, values, rules, policies and procedures of the department. Employee's conduct must be above reproach and must not impugn the credibility and honesty of the department, it's employees, or the corrections profession.

17. (A) Failure by employees to follow this policy may result in appropriate disciplinary action, up to and including dismissal.

18. (B) It is essential to the orderly operation of the department that employees conduct themselves professionally, in accordance with the following standards: (1) Violation of Directives: Employees shall not knowingly commit or omit acts which constitute a violation of any policies, rules, procedures, regulations, directives, or orders of the department.

## IV. FACTS

19. In the last couple of weeks in June 2020, an order came down from an Lieutenant Robinson an employee in the management position which had ordered all TRCI security staff to conduct a "pat down" when AIC's are in the halls waiting in line for their meals. This new policy was implemented after the COVID-19 pandemic was in full swing at this institution. It was not mandated by management that all staff must wear gloves at this time and change them after each pat down. It was not mandated that staff should be wearing a mask at this time during the pat down. Management did not direct staff to have all AIC's face away from the staff while patting them down at this time. Most employees did not wear a face covering at this time.

20. Upon information and belief I understand that a mask mandate was written by Captain Rumsey on June 30th and to be implemented on July 1st, 2020. This mandate was immediately rescinded by Captain Rumsey due to inner departmental politics which I am not privy to.

21. On June 27th, 2020 plaintiff wrote a **grievance #TRCI-2020-06-166** to complain that Officer Davis had pulled him out of line for the evening meal to pat him down. He complained that

Officer Davis did not change out his gloves, wear a face covering or have him turn his back on him while he patted the plaintiff down. This grievance and appeal was denied which shows the court that the administrative remedies on this officer have been exhausted. See attachment #1 and #2 with the response.

22.   On July 7th, 2020 a memo/directive was posted on my unit bulletin board saying that all AICs have to wear a face mask when leaving their housing units, traveling in the hallways, going to med lines, or entering into medical. This was when all AICs were ordered to eat all meals in their cells.

23.   Upon information and belief the plaintiff spoke with Officer Frazier on July 16th, 2020 in the main corridor #5, right in front of the (19) nineteen education department. He had learned from the officer that a memo/email had came out of Salem from the Director of Corrections Colette Peters on July 13th, or 14th. This mandate is directed to all Oregon of Department of Corrections employees telling them to wear a face covering/mask around all AIC's if they can't practice social distancing. This new DOC policy was to be implemented and enforced on Wednesday July 15th, 2020.

24.   At or around 1400hrs, is the time for staff shift change from day shift(or 2nd shift) to swing shift(or 3rd shift) to 2200hrs. Officer Plourde came onto plaintiff's housing unit at 1400hrs to relieve the day shift staff. At 1800hrs is was when Officer Carrillo came into to work four hours of overtime. This officer is also the graveyard (or 1st shift) staff two nights a week from 2200hrs to 0600hrs. Officer Plourde and Officer Carrillo did not wear any type of face covering their entire time on my unit till 2200hrs.

25.   Sometime before 1500hrs on July 15th, 2020, Officer Plourde went into cell 12-34 to do a shake down. He entered into this cell not wearing a face covering or protective gloves taking his duty seriously to take every precaution to protect inmates. One occupant of this cell had to wait in the unit day room until Mr. Plourde was done and the day room occupants were witness to Mr. Plourde's carelessness.

26.   Around 1515hrs, Officer Plourde was doing a tier walk on the bottom tier and he had to pass by the plaintiff sitting in the day room. Plaintiff had asked him where was his face mask? He responded, "In my pocket." Plaintiff had witnessed that the officer made no attempts to find a mask

and put it on his face to cover his nose and mouth. Each time plaintiff saw Officer Plourde till he went home, he wasn't wearing a mask.

27.  The officer who worked from 1400hrs to 1800hrs was sharing the overtime shift. When a staff member is forced to work overtime, it is called "Getting Bucketed." If the "bucketed " officer doesn't want to work a full overtime shift of eight hours, they will find a "split partner" that will cover four of those eight hours. This was why Officer Carrillo came on at 1800hrs.

28.  Officer Carrillo did not wear a face covering or practice social distancing the four hours he worked overtime. 1800hrs is when the day room is opened in the evening and then at 2200hrs, the AICs are locked down until the next morning.

29.  On the same day of July 15th, at around 2006hrs, plaintiff had witnessed Sgt. Irving on the housing unit #12 talking with both Officer Carrillo and Officer Plourde right in front of the unit office door which can bee seen by security camera #218. Sgt. Irving was on the housing unit wearing a black mask which was covering her mouth and nose. She kept the mask on the entire time she stayed on the unit. While she was talking to both of her subordinates, Officer Plourde and Officer Carrillo, they had made no attempt to put on any type of face covering.

30.  It is the belief of the plaintiff that Sgt. Irving did not tell her subordinate staff to wear a mask around inmates if they can't practice social distancing. I am alleging that she failed to remind them of the memo that came out from the Office of the Director of Corrections the day before. I am also alleging that if Sgt. Irving did tell her subordinate staff to wear masks, they outright refused to do so which is their failure to follow DOC Policy. They made the personal choice in their individual capacities to work around inmates and not wear masks, which shows the necessary elements to prove deliberate indifference. Plaintiff alleges that Sgt. Irving is liable in her supervisory role and in her official capacity for her subordinates' disregard for following DOC policies, Constitutional and ORS violations not holding them accountable. The officers knew that being asymptomatic for COVID-19 created a substantial risk for the incarcerated people they are sworn to protect as read in **DOC Policy 20.1.2 "Code of Ethics"** "I accept that my fundamental duty is to serve the public; to safeguard lives and property, to protect Department of Corrections incarcerated persons against deception, oppression or intimidation, violence or disorder." Plaintiff is not a medical professional,

so he has to believe that everyone from the free world is asymptomatic and is a threat to his health, which is why masks are so important.

31.   On July 18th, 2020 the plaintiff wrote an Inmate Communication addressed to Captain Rumsey saying the following: "I understand that Salem put out a department wide email saying that all staff wear face coverings when they can't practice social distancing with AIC's this past week? Was this true?" Captain Rumsey responded on July 21st, 2020 saying, "Staff have been instructed that they need to wear a mask when they can't social distance." See Exhibit ( )

32. On Sunday morning July 19th, 2020 between 0900hrs. and 0930hrs, med line was called for plaintiff's housing unit. This means that he has to exit out the unit door to the left, down corridor (4) four, take a right turn, and head down corridor (5) five until he will reach med line, this is always in front of the medical department. When plaintiff arrived, he saw that officer Nielsen was the med line officer which was his regular day to be there. Plaintiff saw that officer wearing a face covering improperly by only having his mouth covered and not his nose. This can be seen on the corridor cameras at this time.

33.   When it was the plaintiff's turn to get medication, he was standing in front of Nurse Rhodes. This was when he had asked her about the effectiveness of a face covering just the mouth versus both the mouth and nose. That was when plaintiff pointed out to the nurse that the officer was not wearing his face covering properly. She advised the plaintiff that a mask is more effective when both the mouth and nose were covered so as not to spread COVID-19 in here. She acknowledged that Officer Nielsen wasn't wearing his mask properly when the plaintiff had pointed this out to her.

34.   When Nurse Rhodes was done counseling plaintiff and giving him his medication, he had to swallow the pill and open his mouth to show officer Nielsen that he had swallowed his medicine. After plaintiff showed him that he took his medication, plaintiff pulled his face mask back up and he proceeded to share with Officer Nielsen this information given to him about face coverings/masks. He replied, "Its not a real masks." Plaintiff told him that for any face covering to be effective, it has to cover his nose and mouth. He shrugged off the plaintiff and he returned to his housing unit to fill out a grievance about what happened.

35.   On Monday morning July 200, 2020, plaintiff was standing in line waiting for medication around 0915hrs when he saw Officer Nielsen, the med line officer, not wearing his face covering properly. When it was plaintiff's turn to get his medication, he was standing in front of nurse Thurman. Plaintiff had asked her about the effectiveness of a face covering just the mouth and not the nose too. Nurse Thurman went on to tell him about how if a person doesn't cover their nose and they sneeze, how the droplets from a sneeze can travel and hang around in the air. Plaintiff had pointed out that Officer Nielsen only had his mouth covered. Nurse Thurman had acknowledged this, and then she advised plaintiff to "send a kite"(inmate communication) to tell someone.

FIRST CLAIM FOR RELIEF:

(EIGHTH AMENDMENT VIOLATION)

(Plaintiff reincorporates paragraph 1-35, as if stated wherein, and alleged)

36.   Based on plaintiff's conversation the previous day with Officer Nielsen about the effectiveness of face coverings & after plaintiff's conversation with the nurse... It concerned him that the very next day in med line that he witnessed Officer Nielsen fail to respond reasonably to protect him which creates a substantial risk where plaintiff can be harmed by a COVID infection. Plaintiff believes this fits the legal standard of deliberate indifference. There are posters everywhere you walk around the Two Rivers Correctional Institution about the warnings and preventative methods of keeping yourself safe from contracting COVID-19. This is an Eighth Amendment violation of Cruel and Unusual Punishment, that creates an unsafe environment by negligent staff in this age of the COVID-19 pandemic.

37.   On Sunday morning July 26th, 2020 at 0907 hrs, plaintiff was at morning med line when he witnessed Officer Nielsen once again improperly wearing his face covering just over his mouth. When Officer Nielsen saw plaintiff in line, he pulled up his mask over his nose and ignored him. Plaintiff didn't know how long before he arrived did the officer improperly wear his face covering or for how long after plaintiff left to return to his housing unit? Plaintiff is sure that the cameras in the area would show his indifference to protecting plaintiff.

38.  Upon information and belief plaintiff was talking with several staff members about the screening process for them to enter into this institution before they are allowed into to work. This consists of a few questions and a current temperature reading. It has proven in the present day that staff entering into the institution that are proven asymptomatic or has symptoms, it means that any AICs in contact with those asymptomatic staff are to be monitored and quarantined by the medical department. Plaintiff alleges that this action by staff to expose and infect inmates can rise to the legal standard of evil intent if they choose to not wear a mask properly or wear one at all. When a staff member makes a personal choice to endanger AICs, this shows the court their personal capacity in which they are being sued and need to be held accountable. Plaintiff is not a medical professional so he has no personal knowledge of which staff are asymptomatic with COVID-19. Plaintiff want the court to understand that the plaintiff can't bring it in from the streets like a staff member can. Plaintiff does know that it can end his life if infected with COVID-19 because of his pre-existing health conditions.

39.  Upon information and belief the plaintiff had been made aware on August 25th, 2020 by the television show Good Morning America, the University of North Carolina at Chapel Hill did a study about people that only wore face coverings over their mouth and not their nose. It was explained to the viewing audience that the nose contains higher amounts of COVID-19 which can be spread easier breathing through the nose which isn't covered. This is why a COVID-19 test is done through the nose to find those detectable amounts of this disease.

40.  The study also said that bandannas are not enough material to stop the expulsion of droplets from the nose in the event of a sneeze which is why the less layers worn, the bigger the chances of transmission of this disease. A face mask like a painter's mask is not 100% effective because it can release COVID-19 particles through the vents. These reasons show that it is imperative to wear a face covering properly at all times, especially by the men and women that work in the Oregon Department of Corrections, specifically the Two Rivers Correctional Institution where the plaintiff is housed.

41. The defendants will allege that no laws were broken in order to argue for a motion to dismiss or summary judgment from the beginning. Plaintiff is alleging that their conduct did break the laws in Oregon. Specifically, **Oregon Revised Statute (ORS) 433.010**, "No person shall willfully cause

the spread of any communicable disease within this state." This is a Class C felony which is punishable of up to five years in the Oregon Department of Corrections. This statute is clear about why it is a crime. This deadly disease is communicably spread from an asymptomatic person with COVID-19 refusing to wear a mask properly to an unsuspecting victim such as an incarcerated person.

42.   The defendants can also be held accountable under the **ORS 161.405** "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which contributes a substantial step toward the commission of a crime." The conduct described above meets the "objective" and "subjective" requirements for Farmer v. Brennan 511 U.S. 825 (1994).

43.   This conduct meets the legal requirements to be charged with crimes under the ORS while using their individual capacities to create unsafe prison conditions. They have violated their oath to the State of Oregon when they failed to protect me from potential harm. Their negligence also violated DOC Policies 20.1.1, 20.1.2, 20.1.3 as well.

## IV. EXHAUSTION OF LEGAL REMEDIES

44.   PLAINTIFF **AARON M. HANNA** formerly TIMOTHY ALAN HINKHOUSE used the prisoner grievance procedure available at the Two Rivers Correctional Institution to try and solve the problem(s). On June 27th, 2020, PLAINTIFF **AARON M. HANNA** formerly TIMOTHY ALAN HINKHOUSE presented the facts relating to this complaint in his first grievance concerning the COVID-19 Virus **Case No. TRCI-2020-06-166** and exposure by staff, Officer Davis, TRCI Administration and Management who instructed Officer Davis to do so. On July 10th, 2020, PLAINTIFF AARON M. HANNA formerly TIMOTHY ALAN HINKHOUSE was sent a response to his first grievance saying that the grievance was denied. On July 13th, 2020 he appealed the denied grievance which said "The grievance rule does not permit a returned grievance or grievance appeal to be appealed. Therefore, this appeal is denied." See Exhibits A & B.

45.   On July 19th, 2020, PLAINTIFF **AARON M. HANNA** formerly TIMOTHY ALAN HINKHOUSE presented the facts relating to this complaint in his first grievance concerning the COVID-19 Virus and exposure by careless staff, Officer E. Nielsen. On August 11th, 2020 I was

sent the response, #TRCI-2020-07-125 "Your grievance was accepted and sent for a response. You should expect a response within 35 days from the date of this notice. If you do not receive a response within 35 days contact your institutions Grievance Coordinator." On August 17th, 2020 an unacceptable and untrue response was sent by Officer E. Nielsen saying, "I do not recall this exact interaction with you. I interact with hundreds of Adults in Custody a day over the course of two med-lines and two glucose lines. In response to the allegation of not covering my nose, I always wear my mask over my nose, especially when I am in med-line. My mask is the only barrier between Adults in Custody in med-line and myself when AIC's remover their mask to show me the inside of their mouth. Per institution rules, all AIC's must show the med-line officer the inside of their mouth to prove they ingested their pill/pills, for the safety of the institution. I try to position a cart/table between the AIC's and myself to create a six foot distance, but that distance is not always respected by the AIC's, emphasizing the need for the mask. I do realize that COVID 19 is a very dangerous virus and that it is very important to have a face covering on and covering the nose. I will continue to do my best to slow and stop the transmission of this dangerous virus."

46.   The Plaintiff appealed the grievance on Wednesday August 19th, 2020. On September 11th, 2020  a response was given to the appeal saying, "Dear AIC Timothy Hinkhouse, This letter is in response to your initial **Grievance  Appeal, #TRCI-2020-07-125A,** in which you claim Correctional Officer Nielsen was not wearing the protective mask properly while conducting medication and glucose lines. I have reviewed your appeal, as well as all prior documentation relating to this grievance. According to Correctional Officer Nielsen, he wears the protective mask in accordance with policies and guidelines that been established. He continues to ensure social distancing is maintained and encourages and to follow these policies and guidelines. Thank you for addressing your concerns appropriately. Sincerely, Tyler Blewett, Superintendent."

47.   On September 17th, 2020 plaintiff appealed the final grievance appeal. On September 25th, 2020 it was accepted and sent for a response. Plaintiff should receive a response within 35 days from September 30th, 2020. Plaintiff received a response dated October 16, 2020 saying, "Dear AIC Timothy Hinkhouse, This letter is in response to your **Final Grievance Appeal #TRCI-2020-07-125AA,** in which you claim Correctional Officer Neilson was not wearing the protective mask while conducting medication and glucose lines. I have reviewed your appeal, and I concur with the response you received from Assistant Superintendent Ridley on behalf of Superintendent Blewett.

You have not provided any additional information in this appeal that would warrant a response other than you have already received. Thank you for addressing your concerns appropriately. This concludes the grievance review process for this matter. Sincerely, Mark Nooth, East side Institutions Administrator."

48. "On August 24ᵗʰ, 2020 at the morning med-line, plaintiff witnessed Officer E. Nielsen not wearing his face mask properly. Plaintiff wrote an AIC Communication Form to the Grievance Coordinator  letting them know to add this to the pending grievance appeal as evidence that he doesn't "always wears his mask." See Exhibit C.

49.   On July 15ᵗʰ, 2020 plaintiff submitted a grievance saying,"On this day, c/o Plourde was working unit 12 and he was walking the bottom tier. I was sitting in the day room with my back to cell #12 when out of the corner of my eye I saw c/o Plourde not wearing a mask. As he approached where I was sitting I asked him him where is your mask? He replied, "In my pocket." He was standing closer than six feet away. I was told that the administration in Salem had mandated that all staff who cannot practice social distancing shall wear a face covering around AIC's. At 2005 hrs, Sgt. Irving came onto unit 12 and I saw her talking to both unit 12 officers in front of the office while wearing a face covering. Sgt. Irving failed to remind her subordinates of their duty to protect AIC's and to wear a mask. C/o Bell worked unit 12 from 1400hrs. To 1800hrs wearing a mask when he could not practice social distancing. C/o Carrillo came in at 1800hrs till 0600 and I didn't observe him wearing a mask. Look on the video footage on this day and time of third shift to see that policies implemented by Salem have been ignored."

50.   The response was sent dated August 17ᵗʰ, 2020 which said, "The grievance you submitted is being returned to you due to non-compliance with the Department of Corrections (DOC) Rule #109 (Grievance Review System) for the following reason(s): I am returning your grievance to you as your submission contains multiple staff not wearing masks at different times. Which single incident are you grieving? Which staff person/instance are you grieving? If you are grieving the Sgt., provide information as to why/how you believe she did not say anything to staff or remove that portion from your grievance. (1) An AIC may only request review of one matter, action, or incident per grievance.  **Oregon Administrative Rule (OAR) 291-109-0225 Grievance and a Appeals Processing Standards**, (2) Grievances and grievance appeals returned for correction: (a) An AIC

may elect to resubmit a grievance or grievance appeal that has been returned for correction to the AIC because it does not comply with these rules. (b) The grievance appeal may only be submitted twice and must be received  by the institution grievance coordinator within 14 calendar days from when the grievance or grievance appeal was originally returned to the AIC. (c) If rewritten, the return receipt and original grievance or grievance appeal must also be attached. If you have questions regarding your grievance, please refer to the Department of Corrections Administrative Rule "Grievance Review System" tab #109 located in the legal library or kyte your institution Grievance Coordinator."

51.   On August 19th, 2020 plaintiff resubmitted a grievance **Case No. TRCI-2020-07-148a**, concerning Officer Plourde and Officer Carrillo for an incident that happened on July 15th, 2020. The grievance was re-written saying, "The day described above, C/O Plourde was assigned to work unit 12, which was the same day the directive came from Director Colette Peters telling all ODOC staff to wear masks around AIC's if they can't social distance. C/O Plourde did not wear a mask, which was a direct violation of the ODOC policies from Salem set in place to protect AIC's which was a breach of his duty."

52.   On August 19th, 2020 plaintiff resubmitted a grievance Case No. TRCI-2020-07-148 which is now given the **Case No. TRCI_2020_08_202**, concerning Sergeant Irving for an incident that happened on July 15th, 2020. The grievance was re-written saying. "I saw Sergeant Irving on unit 12 speaking with both officers in front of the office door. She was wearing a mask. At no time did I see Officer Plourde or Officer Carrillo put on a mask while they were talking or after she left. Either Sgt. Irving failed to tell her subordinates to wear a mask around AIC's per the Salem mandate, or she told her officers to wear their masks and they defied Sgt. Irving and the Salem mandate."

53.   The above grievance was denied on September 11, 2020 saying, "The grievance you submitted is being returned to you due to non-compliance with the Department of Corrections (DOC) Rule#109 (Grievance Review System) for the following reasons: After further review, this grievance is denied. Refer also to receipt for **TRCI-2020-07-148a**, sent to you on 8/17/20. A grievance must include a complete description of the incident or issue being grieved, including date and time of the incident or issue being grieved, and the specific individual responsible for the incident or issue. An AIC cannot have more than four active complaints (grievances, discrimination

complaints, or appeals of either) at any time. An AIC may not submit a grievance regarding any matter that does not directly and personally affect the AIC or any matter in which the AIC lacks personal knowledge of the incident or issue. An AIC may not file more than one accepted grievance or discrimination complaint regarding a single incident or issue, regardless of incident date, unless substantial new information is available about the incident or issue. Your grievance has not demonstrated how it qualifies under **(OAR) 291-109-0210**. You have not demonstrated misapplication of departmental policies, rules, or other directives, unprofessional actions of department employees, volunteers, or contractors, inadequate medical or mental health treatment, sexual abuse or sexual harassment or excessive force by department employees. If you have any questions regarding your grievance, please refer to the Department of Corrections Administrative Rule "Grievance Review System" tab#109 located in the legal library or kyte your institution Grievance/Discrimination Complaint Coordinator."

54.   On August 19, 2020 plaintiff submitted a rewritten grievance for case **#TRCI-2020-07-148a** saying, "The day described above, c/o/ Plourde was assigned to work on unit 12, which was the same day the directive came from Director Colette Peters telling all ODOC staff to wear a mask around AICs if they can't social distance. C/o Plourde did not wear a mask his entire shift. At 1800hrs. C/o Carrillo was assigned to work overtime on unit 12. His entire overtime he did not wear a mask, which was a direct violation of the ODOC policies from Salem set in place to protect AICs, which was a breach of his duty."

55.   On August 28, 2020 a response was sent back to plaintiff from Officer Plourde saying, "That day was my first day back from being off work. I had not yet seen the new directive to wear a mask when working the open dayroom/yard. I was still working under the previous wear a mask if six feet distance can't be maintained directive. I was maintaining six feet of distance while working the dayroom/yard."

56.   On September 2, 2020 plaintiff responded with a grievance appeal saying, "Officer Plourde saying that he "had yet seen the new directive to wear a mask", to me, is an unexcusable reply. Ignorance of the law is not an excuse that is allowed to be used in a court of law or when an AIC is held accountable. Officer O. Bell worked from 2-6pm on July 15[th] with Officer Plourde on unit 12 and he wore a mask with every AIC encounter, so he must have known about this mandate and he

should have informed Officer Plourde? Sgt. Irving was on unit 12 that night around 8:00pm wearing a mask, as his supervisor, she must have informed him of this mandate from ODOC Director Colette Peters and he refused to follow it?"

57.    On September 10, 2020 the grievance appeal was "Returned For Correction." On September 17th, 2020 plaintiff rewrote grievance appeal saying, "Officer Plourde saying that he "had not yet seen the new directive to wear a mask", to me is an unexcusable reply. Ignorance of the law is not an excuse that is allowed to be used in a court of law or when an AIC is held accountable. He worked around other staff that should have known and should have told him about this."

58.    On October 16, 2020 a reply was written and sent to the plaintiff saying, "Dear AIC Timothy Hinkhouse, This letter is in response to your initial **Grievance Appeal, #TRCI-07-148A**, in which you claim Correctional Officer Plourde failed to wear a face mask during the scheduled shift. I have reviewed your appeal, as well as all prior documentation relating to this grievance. Correctional Officer Plourde was working under the direction that if maintaining social distancing, a mask was not required. As this direction had changed on, or about, the day in question, he was working under that directive. Correctional Officer Plourde now understands the directive and will follow the directives that are disseminated. Thank you for addressing your concerns appropriately. Sincerely, Tyler Blewett, Superintendent, Two Rivers Correctional Institution."

59.    On October 23, 2020 plaintiff appealed the decision of Tyler Blewett saying: "Your final grievance appeal was accepted and sent for a response. You should expect a response within 35 days from the date of this notice. If you do not receive a response within 35 days contact your institutions Grievance Coordinator."

60.    The reply was written on November 20, 2020 saying, "Dear AIC Timothy Hinkhouse, This letter is in response to your Final Grievance Appeal, #TRCI-2020-07-148AA, in which you claim Correctional Officer Plourde failed to wear a face mask during the scheduled shift. I have reviewed your appeal, and I concur with the response you received from Assistant Superintendent Jackson on behalf of Superintendent Blewett. You have not provided any additional information in this appeal that would warrant a response other than that which you have already received. Thank you for addressing your concerns appropriately. This concludes the grievance review process for this

matter. Sincerely, Mark Nooth, Eastside Institutions Administrator.

61.   Plaintiff lives on housing unit number 12 which is located on on corridor four (4) and it is the closest corridor to the institution canteen where Officer Plourde has been assigned to work. As a result of living on corridor 4, plaintiff walks past the canteen on his way to med-line and medical call-outs and he sees Officer Plourde each time. On August 24th, 2020, plaintiff wrote an AIC Communication Form to the Grievance Coordinator saying, "I have just recently resubmitted a grievance for an incident that happened on July 15th, 2020 concerning Officer Plourde not wearing any face covering. Today, Officer Plourde was the canteen officer when unit 12 was called and he wasn't properly wearing his mask over both his mouth and nose. Several AICs had been witness to this that were standing in line waiting for their canteen. Please add this to the grievance as an attachment to support my claim of his deliberate indifference of his actions over a month after the directive came from the Director of Corrections, Colette Peters' office in Salem on July 15th, 2020." This was stamped and assigned **Case number 20-08-68**.

62.   Plaintiff wrote another AIC Communication Form to the Grievance Coordinator dated August 25th, 2020 saying, "Walking onto corridor 5 passing the canteen, I observed Officer Plourde not wearing his mask properly by only covering his mouth. He was wearing his mask the same way as I was returning to my housing unit. At 10:27am I was on my way to blood pressure line when I passed by the canteen and he was (Officer Plourde) still not wearing his mask properly. He had it only covering his mouth again. At 10:37am I was on my way back to corridor 4 to return to my housing unit & Officer Plourde still had his face mask just covering his mouth. At his time, Officer H. Cochell can also be seen on camera walking right past him and I was behind her and she didn't correct his behavior being the senior officer in the area of Officer Plourde. Please enter this into the record and attach this to the resubmitted grievance I've written about Officer Plourde concerning this issue." **Case number 20-08-69**.

63.   Plaintiff wrote another AIC Communication to the Grievance Coordinator dated August 26th, 2020 saying, "At 8:35am, I was walking past the canteen on my way to med-line when I observed Officer Plourde not wearing his face mask properly. It was just covering his mouth. At 8:41am, I was walking past the canteen on my way back to my housing unit, when I observed Officer Plourde wearing his face mask improperly. He had it just covering his mouth and not his nose. At 9:44am, I

was walking by the canteen on my way to a medical call-out. I again observed Officer Plourde improperly wearing his face mask which was just covering his face. At 9:53am, I observed Officer H. Cochell walking past Officer Plourde, with her having seniority, I feel that she should have corrected his unprofessional actions. I walked past officer H. Cochell and then Officer Plourde on my way back to my housing unit. Per the directive sent from Director of Corrections Colette Peters, by way of Governor Kate Brown, and the Centers for Disease Control, all masks are to be worn properly which covers both the nose and the mouth. Please add this to the growing amount of evidence to support the grievance I've written against Officer Plourde for him violating my Eighth Amendment right to be free from Cruel and Unusual Punishment, by him making unsafe prison conditions. **Case number 20-08-76**.

64.    On August 31st, 2020, at 9:05am the plaintiff was on his way to med-line when he saw Officer Plourde standing in front of the canteen wearing his mask properly. At 9:14am plaintiff was on his way back from med-line returning to his housing unit, when he saw Officer Plourde now wearing his face mask improperly just covering his mouth. At 12:59pm, plaintiff was returning from medical walking past the canteen when I saw Officer Plourde not wearing his mask properly. He had it just covering his mouth. This established a pattern for plaintiff to show the court.

65.    On Sunday September 13, 2020 plaintiff was returning from morning med line. As he was passing by the Security Ops. Door on corridor 5 around 0845hrs. Plaintiff had observed Officer Cochell not wearing a face mask while holding open this door and talking to Corporal Fairley closer than six feet away. This was a blatant disregard for **DOC policies 20.1.2 (Code of Ethics)**, **20.1.3 (Code of Conduct)**, orders from Governor Kate Brown, the Centers for Disease Control, and the Oregon Health Authority to wear a face mask when you can't safely social distance. This was an obvious violation of her duty to protect incarcerated individuals that pass by her respiratory droplets lingering in the air and her coworkers that come into contact as well.

66.    On Monday morning September 14, 2020 when unit 12 was called to go to canteen. Officer Plourde was the canteen officer, who once again, was improperly wearing his face mask. He was standing right by the entrance where AICs go into the canteen to pick up their purchases. Plaintiff had to approach the bulletin board closer than six feet away from him to pick up an incentive item list. Plaintiff can purchase items with this list in the future for AICs with the clear conduct to do so.

Plaintiff is not in the position of authority to let an officer know to wear their face coverings properly.

67.  On Tuesday evening September 15th, 2020 around 1800hrs. Plaintiff was called to the infirmary to cut hair of some of the patients. This is a job that he has been doing since early 2014. Before going to the infirmary, you must first pass through the sally port going into medical and have the officer take your temperature before being allowed admittance into medical. The medical officer then has to escort the AIC back to the infirmary door. On this particular evening, Officer Plourde was the medical officer that took plaintiff's temperature. When Officer Plourde approached him, he wasn't wearing his mask properly because it was just covering his mouth. In order to take plaintiff's temperature against his forehead, Officer Plourde had to be standing closer than six feet away. This shows a continued pattern of deliberate indifference for his blatant disregard for the safety of incarcerated individuals at TRCI not wearing his mask properly.

## V. LEGAL CLAIMS

68.  PLAINTIFF re alleges and incorporate reference paragraphs 1- 67.

69.  The unsafe conditions violated **PLAINTIFF AARON M. HANNA** formerly TIMOTHY ALAN HINKHOUSE rights and constituted  Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

70.  The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants declaratory and injunctive relief which plaintiff seeks.

71.  (1) Per 42 U.S.C 1997e (a) plaintiff has exhausted available Administrative Remedies.

72.  (2) This claim is not barred by Oregon's Statute of Limitations for (ORS) 433.010.

73.  (3) Eleventh Amendment immunity is inapplicable.

74.  (4) "When resolving a qualified immunity question: the court engages in a two pronged

inquiry. Tolan v. Cotton 572 U.S. 650, 655 (2014) The first prong: Whether the officer's conduct violated a Federal Right, the second: Whether the right in question was clearly established at the time of violation." The Sixth Circuit has held that the COVID-19 Pandemic "easily satisfies" the objective prong of the deliberate indifference test, which asks whether inmates are "incarcerated under conditions posing a substantial risk of harm. See Wilson v. Williams 961 F.3d 829, 840 (6th Cir. 2020). Farmer v. Brennan 511 U.S. At 837, Where the risk of harm is obvious, as in the case with COVID-19, "The existence of this subjective state of mind" may be inferred id@841 quoting Hope v. Pelzer, 536 U.S. 730, 738 (2002). Defendants used their own conscious state of mind to not wear a protective mask or wear one improperly knowing their conduct could cause a COVID-19 infection in this correctional setting. Having awareness of the substantial harm they can cause in their work environment, and the potential risks that could spread COVID-19 to a vulnerable population, in which they are sworn to protect is showing their intent to commit harm, which is a violation of the U.S. Constitution.

75.    (5) Defendants can and should be charged under ORS 433.010 for merely exposing plaintiff to COVID-19, for failing to wear a protective mask or wear one properly, and infection would kill him with his preexisting conditions. Back in the early 1990's, prosecutors in Oregon have charged defendants who were accused of exposing unsuspecting people to the HIV/AIDS virus via unprotected sexual intercourse. This was at the time when there wasn't any life saving treatments and people were dying with complications from AIDS.

76.    (6) Plaintiff has contacted Linda Simon on November 28th, 2020, who is the Public Information Officer at the Two Rivers Correctional Institution, to ask that she preserve TRCI video footage the dates, times, and locations of the offenses committed by staff members to back plaintiff's claims. This footage will also show the court video evidence contrary to their statements given in the grievance process and what supervisors would have seen if they chose to look at the video instead of taking the word of staff over what plaintiff saw, as well as the cameras internally.

77.    (7) Plaintiff received a response from Ms. Linda Simon dated December 9th, 2020 saying, "This memorandum is in further response to your December 1, 2020, request for the following Department of Corrections records: *Numerous video footage requests, Upon review the department has determined the above records are exempt from disclosure under ORS 192.355(5). You may seek

review of our determination pursuant to ORS 192.401, 192.411, 192,415, 192.418, 192.422, 192.427, and (formerly ORS 192.450, 192.460, 192.465, 192.470, 192.480, and 192.490).

## VI. PRAYER FOR RELIEF

78.   WHEREFORE , Plaintiff respectfully prays that this court enter judgment granting Plaintiff:

79.   A declaration that the acts and omissions described herein under the Color of Law and individually violated plaintiff's rights under the U.S Constitution, the Laws of the State of Oregon, and the United States of America.

80.   A preliminary and permanent injunction ordering defendants Officer Plourde, Carrillo, Nielsen, be given the disciplinary actions requested by the plaintiff in the original grievances, whether it be a Letter of Expectation or Letter of Reprimand to be placed in their employee files in Human Resources. Superintendent Tyler Blewett should be issued reprimand by Director Colette Peters, for not investigating claims made by plaintiff via supported by TRCI cameras and talking to witnesses, both staff and AICs, about the conduct of staff named in this civil suit.

81.   A preliminary and permanent injunction ordering Umatilla County District Attorney to open a criminal investigation on the defendant's conduct under ORS. 433.010, to hold named officers accountable for their reckless actions during a worldwide pandemic that was and is killing large numbers of people.

82. Compensatory damages in the amount of $5,000 against each defendant, jointly and severally.

83.   Punitive damages in the amount of $345,975 against each defendant.

84.  A jury trial on all issues triable by jury.

85.   Plaintiff's costs in this suit.

86.   Any additional relief this court deems just, proper and equitable in holding defendants accountable.

Dated this day _APRIL 1ST, 2021_

Respectfully Submitted,

AARON M. HANNA    _aaron M. Hanna_
TIMOTHY ALAN HINKHOUSE #7632447

Two Rivers Correctional Institution

82911 Beach Access Road

Umatilla, Oregon 97882

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged herein true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Umatilla Oregon on (date) _APRIL 1ST, 2021_

Signature: _Aaron M. Hanna_

AARON M. HANNA  formerly, TIMOTHY ALAN HINKHOUSE

CERTIFICATE OF SERVICE

CASE NAME: AARon M. HANNa          v. Colette PeteRS et.al,

CASE NUMBER: (if known) _____

COMES NOW, AARON M. HANNa _____, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution. (TRCI)

That on the 1st day of APRil _____, 20 21, I personally gave Two Rivers Correctional Institution's e-filing service a TRUE COPY of the following:

USD-NA 1983 Document. out

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Aaron M. Hanna
(Signature)

Print Name: AARon M. HANNa

SID #: 7632447