IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AARON M. HANNA, | Case No. 2:21-cv-00493-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COLETTE PETERS, TYLER BLEWETT, LIEUTENANT ROBINSON, SERGEANT IRVING, OFFICER PLOURD, OFFICER H. COCHELL, OFFICER CARRILLO, OFFICER NIELSEN, and OFFICER DAVIS, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Aaron M. Hanna, an adult in custody ("AIC") at Two Rivers Correctional Institution ("TRCI") filed this action against several Oregon Department of Corrections ("ODOC") officials (together, "Defendants") alleging that they acted with deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment by failing consistently to comply with and enforce ODOC's mask policy.

Hanna filed a motion for preliminary injunction, asking the Court to order Defendants to comply with and enforce ODOC's mask policy. (ECF No. 24.) All parties have consented to the

PAGE 1 – OPINION AND ORDER

jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636, and the Court held a hearing on Hanna's motion on March 9, 2022. For the reasons discussed herein, the Court grants in part Hanna's motion for a preliminary injunction.

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Preliminary Injunction

A party seeking a preliminary injunction "must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *Sovereign v. Deutsche Bank*, 856 F. Supp. 2d 1203, 1217 (D. Or. 2012) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F. 3d. 1127, 1131 (9th Cir. 2011)). "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).[1]

///

///

---

[1] The Ninth Circuit also provides an additional preliminary injunctive relief test: the "serious questions" test. *All. for the Wild Rockies*, 632 F.3d at 1131-32. However, where, as here, Hanna seeks a mandatory injunction, courts decline to apply the "serious questions" standard. *See P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) ("Plaintiffs seek a mandatory injunction, the Court declines to interpret the 'serious questions' standard for purposes of the Motion as inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in 'doubtful cases' and not be granted 'unless the facts and law clearly favor the moving party.'").

PAGE 2 – OPINION AND ORDER

### B.     Mandatory Injunction

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (simplified). The "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). A plaintiff requesting a "mandatory injunction" must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (quoting *Garcia*, 786 F.3d at 740).

### C.     Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") imposes additional restrictions on a court's ability to grant injunctive relief. Any such "[1] relief must be narrowly drawn, [2] extend no further than necessary to correct the harm the court finds requires preliminary relief, and [3] be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The PLRA requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.* Preliminary relief relating to prison conditions "shall automatically expire on the date that is 90 days after its entry, unless the court makes findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." *Id.*

///

///

///

///

PAGE 3 – OPINION AND ORDER

## II. ANALYSIS

### A. Preliminary Injunction

Hanna seeks a preliminary injunction requiring Defendants to comply with and enforce ODOC's mask policy at TRCI. For the reasons discussed below, the Court grants in part Hanna's motion.[2]

The Court must evaluate the four factors the Supreme Court outlined in *Winter* to determine if Hanna has established the need for preliminary injunctive relief: (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of equities, and (4) the public interest. *See Sovereign*, 856 F. Supp. 2d at 1217 (citing *Winter*, 555 U.S. at 20). In addition, because Hanna is requesting a mandatory injunction, the Court must also conclude that "the law and facts *clearly favor* [his] position[.]" *Innovation Law Lab*, 310 F. Supp. 3d at 1156 (quoting *Garcia*, 786 F.3d at 740).

#### 1. Likelihood of Success on the Merits

The Court finds that Hanna has presented sufficient evidence, in the form of his own sworn declaration and those from other TRCI AICs, that Defendants have failed consistently to comply with and enforce ODOC's mask policy at TRCI. (*See* Supp. Br. in Supp. of Pl.'s Mot. for Prelim Inj., ECF No. 75, at 6 (summarizing masking non-compliance evidence); Fifth Decl. of Aaron Hanna, ECF No. 73 (documenting several examples of defendant Correctional Officer Eric Nielson not wearing a mask); *see also* Decl. of Aaron Hanna, ECF No. 47 ("I witnessed H. Cochell not wearing a mask"); Decl. of Randy Williams, ECF No. 77 ("I continue to observe numerous staff members fail to wear their masks correctly, and some still refuse to wear them

---

[2] The Court denies Hanna's motion to the extent he requests ODOC-wide relief and specific compliance mechanisms, such as surveillance and body cameras.

PAGE 4 – OPINION AND ORDER

altogether" and "[t]he corrections officer ("CO") that works in the canteen continues to refuse to wear a mask [and] I have heard him say that he will . . . not wear his mask inside"); Decl. of Michael Leonard, ECF No. 78 ("I continue to see COs that wear their mask incorrectly, such as under their nose or on their chin;" "I continue to observe staff take their masks off," and "I have asked [a CO in the canteen] to put a mask on in the past, yet he refused"); Decl. of Calvin Jackson, ECF No. 79 ("Many staff members wear their mask down under their nose, or not at all."); Decl. of James Ross, ECF No. 80 ("When I witness COs not wearing their masks, I want to confront them . . . I have never done so because I am afraid of retaliation and the possibility of losing privileges."), Decl. of Anthony Ortega, ECF No. 81 ("I did witness COs who did not wear their masks," "I saw officers who wore their masks improperly," and "I still see COs not wearing masks while together in the officer area [and] I still on occasion witness COs who do not wear their mask properly on the unit"), Decl. of Adam Coopersmith, ECF No. 82 ("I have seen COs pull their masks down on the unit to talk, or wear their masks under their chin")).

Hanna also presented the deposition testimony of an ODOC official who testified in a related case that some ODOC correctional staff members have been reluctant to wear their masks because they do not believe in masking, believe masking rules are a violation of their rights, or believe that COVID-19 is not real. (Decl. of Counsel, Ex. 4, ECF No. 76-4, attaching Dec. 22, 2020 deposition transcript of B. Cain). Further, Hanna presented testimony from an interim superintendent who was not aware that the single layer gaiters worn by some TRCI officials did not comply with ODOC's mask policy. (Decl. of Counsel, Ex. 6, ECF No. 76-6, attaching Mar. 3, 2021 deposition transcript of K. Jackson).

Defendants respond with sworn declarations attesting to Defendants' and others' best efforts to comply with the mask policy at TRCI, and the declarations demonstrate that mask

PAGE 5 – OPINION AND ORDER

compliance at TRCI has improved over time. However, it is also clear from the declarations that TRCI's correctional staff sometimes struggle with understanding and complying with the mask policy. (*See, e.g.*, Decl. of Eric Nielson, ECF No. 68 ("[I]n the past I have sometimes not worn a mask when in the staff office with a particular staff member . . . I believed this was permissible [but] I now understand that I should wear one."); Decl. of Matt Turner, ECF No. 71 ("I, myself, have been corrected at least once by a staff member who noticed my mask had slipped.")). In addition, Defendants have not imposed any meaningful discipline on correctional officers who violate masking rules. (*See* Defs.' Resp. to Ord. to Show Cause, ECF No. 54 (attaching records demonstrating that TRCI's progressive discipline policy with respect to masking resulted in only eleven verbal reminders and two non-disciplinary letters of expectation over a two-year time period)).

Further, Defendants' counsel reported at the hearing that approximately one-third of TRCI employees have received medical or religious exemptions from the vaccine requirement and are therefore required by ODOC's mask policy to wear an N95 mask, but TRCI's COVID Compliance Officer who is responsible for mask compliance inspections is not aware of which staff have received the vaccine exemption, and therefore it is impossible for him to monitor masking compliance in any meaningful way. (*See* Decl. of Shilo Ray ("Ray Decl."), ECF No. 83, noting that ODOC staff with a medical or religious vaccine exemption must wear an N95 mask; Sec. Decl. of Hugo Enriquez, ECF No. 85 ("I am generally unaware of which ODOC staff members have received vaccination exemptions [and t]herefore, that issue is not taken into account during my inspections")).

In light of public health guidance more than two years into the pandemic regarding the importance of consistent and proper masking to prevent the spread of the COVID-19 virus, a

PAGE 6 – OPINION AND ORDER

correctional official's inconsistent or improper masking while in the close vicinity of AICs demonstrates deliberate indifference to a substantial risk of serious harm to AICs, including Hanna.³ Specifically, Hanna has demonstrated a likelihood of succeeding on the merits of his claim that Defendants knew of a substantial risk of serious harm to AICs in the absence of consistent and proper mask wearing, and disregarded the risk by not consistently and properly wearing required face coverings and by not enforcing the mask policy. *See Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that "deliberate indifference" is established when "the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *see also Shank v. Corizon Inc.*, No. CV 19-04638-PHX-ROS (JFM), 2020 WL 5628014, at *4 (D. Ariz. Sept. 2, 2020) ("[K]nown noncompliance with generally accepted guidelines for inmate health strongly indicates deliberate indifference to a substantial risk of serious harm." (quoting *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 943 (N.D. Cal. 2015))).

Defendants argue that although their masking compliance may be imperfect, they have acted reasonably under the circumstances. Defendants set the bar too low. Although a prison official's duty under the Eight Amendment is to ensure only reasonable safety, the inconsistent and improper mask wearing on the record before the Court suggests that Defendants' actions are unreasonable under the circumstances present here. *See Farmer*, 511 U.S. at 844-45 ("A prison official's duty under the Eighth Amendment is to ensure reasonable safety," and "prison officials

---

³ Defendants do not challenge whether the COVID-19 virus poses a substantial risk of serious harm to AICs. *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm[.]").

PAGE 7 – OPINION AND ORDER

who act reasonably cannot be found liable[.]" (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993))).

Defendants also suggest that injunctive relief is inappropriate based on the Ninth Circuit's recent guidance in *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613, 618 (9th Cir. 2021), but that case involved a nationwide preliminary injunction that applied to all immigration detention facilities in the United States and required the federal government to take several specific actions to address COVID-19. None of the reasons the Ninth Circuit cited for reversing the district court's nationwide preliminary injunction apply to the narrowly-focused injunctive relief Hanna requests here. Rather, this case is more like *Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020), in which the Ninth Circuit affirmed the district court's preliminary injunction requiring a single immigration detention facility to implement a few specific measures to protect detainees from the CVOID-19 virus. *See Roman*, 977 F.3d at 939 (affirming in part the district court's preliminary injunction "because the district court had broad equitable authority to grant provisional relief to remedy a likely constitutional violation"); *see also Zepeda Rivas v. Jennings*, 504 F. Supp. 3d 1060, 1077 (N.D. Cal. 2020) (entering preliminary injunction requiring immigration detention facility to provide constitutionally adequate COVID-19 protective measures).

In light of Hanna's evidence in support of his motion that some of the named defendants have not complied consistently with TRCI's mask policy and the evidence that Defendants have not established effective enforcement of ODOC's mask policy at TRCI, Hanna has demonstrated a likelihood of success on his deliberate indifference claim and has further demonstrated that the law and facts clearly favor his position.

///

PAGE 8 – OPINION AND ORDER

### 2. Likelihood of Irreparable Harm

The second *Winter* factor "requires plaintiffs . . . to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (noting that the "possibility" of irreparable harm is insufficient). Hanna has demonstrated a likelihood of irreparable harm, both in light of the serious health consequences of the COVID-19 virus and because Hanna is immunocompromised. *See Basank v. Decker*, No. 20-cv-2518-AT, 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020) (finding that "[t]he risk of contracting COVID-19 in tightly-confined spaces, especially jails, is now exceedingly obvious" and concluding that "[p]etitioners face irreparable injury—to their constitutional rights and to their health"). Indeed, Hanna contracted the COVID-19 virus while his preliminary injunction motion was pending. (*See* Third Decl. of Aaron Hanna, ECF No. 50.)

Although Defendants argue that Hanna is no longer at risk of infection because he has now recovered from the virus, they present no evidence that one bout with the COVID-19 virus affords complete immunity to future infection from a different COVID-19 variant (and, indeed, their argument is contrary to current public health guidance). On this record, Hanna remains at risk for contracting the COVID-19 virus and has demonstrated a likelihood of irreparable harm.

### 3. Balance of Equities and the Public Interest

There can be no serious dispute two years into the COVID-19 pandemic that the public interest is served by protecting individuals from COVID-19, both in and out of custody. *See Frazier v. Kelley*, No. 4:20-cv-00434-KGB, 2020 WL 2110896, at *10 (E.D. Ark. May 4, 2020) ("[The] public interest is served by protecting plaintiffs . . . from COVID-19 both within [defendants'] facilities and among communities surrounding and interacting with those facilities[.]"); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. May 12, 2020)

PAGE 9 – OPINION AND ORDER

(noting that, in assessing the balance of equities and the public interest, "Petitioners' interest in avoiding serious illness or death must weigh heavily on the scales").

On the other hand, "[s]tates have a strong interest in the administration of their prisons[,]" and the Supreme Court has cautioned "that federal courts must tread lightly when it comes to questions of managing prisons, particularly state prisons[.]" *Frazier*, 2020 WL 2110896, at *9 (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). The "public interest also commands respect for federalism and comity" and the "Court should approach intrusion into the core activities of the state's prison system with caution." *Id.* at *10; *see also* 18 U.S.C. § 3626(a)(2) ("The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]").

Balancing the equities and evaluating the public interest here, the Court finds that an order requiring Defendants merely to comply with their own mask policy is equitable on balance, in the public interest, and not an inappropriate intrusion in prison administration.[4] *See Banks v. Booth*, 468 F. Supp. 3d 101, 124 (D.C. Cir. 2020) (finding that an injunction that "lessens the risk that Plaintiffs will contract COVID-19 is in the public interest because it supports public health," and "ordering Defendants to take precautions to lower the risk of infections for Plaintiffs also benefits the public"); *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *13 (N.D. Ill. Apr. 9, 2020) (rejecting the defendants' arguments that "an injunction requiring him to implement additional health and protective measures would be disruptive to his ongoing efforts

---

[4] Defendants also argue that a preliminary injunction would reverse this Court's opinion denying preliminary injunctive relief in a related putative class action against ODOC officials. (Defs.' Resp. to Mot. for Prelim. Inj., ECF No. 31, at 7.) However, the Court's previous denial of preliminary injunctive relief was based on its evaluation of ODOC's response to the COVID-19 virus in June 2020, i.e., at the very beginning of the pandemic. *See Maney v. Brown*, 464 F. Supp. 3d 1191 (D. Or. 2020). In contrast, Hanna's motion targets current conditions as of March 2022, and at TRCI only.

PAGE 10 – OPINION AND ORDER

to address the spread of coronavirus in the Jail" and "that the court should defer to the Jail's practices and its execution of policies that preserve internal order, discipline, and security in the facility").

The Court provided Defendants with multiple opportunities to agree to comply with their own mask policy to resolve Hanna's motion, as ODOC has done in response to several state habeas petitions, but Defendants were unable to resolve Hanna's motion with any form of a stipulated agreement to comply with their mask policy. Although this Court attempted to avoid any intrusion into the administration of the state's prison system, a court order ordering Defendants to do what they should already be doing is now necessary.

### 4.    Conclusion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *Helling*, 509 U.S. at 32 (quoting *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)). As of March 18, 2022, 5,311 AICs in ODOC custody, including Hanna and 1,287 other AICs at TRCI, have contracted the COVID-19 virus, and 45 of the 5,311 AICs have died. (*See* https://www.oregon.gov/doc/covid19/Pages/covid19-tracking.aspx (last visited Mar. 18, 2022)). The COVID-19 pandemic is not yet over, and if an AIC at TRCI witnesses a correctional officer refusing to wear a mask, wearing a mask improperly, or wearing an unapproved face covering, they are powerless to demand compliance.

For all of the reasons discussed herein, the Court grants Hanna's request for a preliminary injunction requiring compliance with and enforcement of ODOC's mask policy.

### B.    Hanna's Appointed Counsel

The Court appointed Juan Chavez, a member of the Court's pro bono panel, to assist Hanna with the hearing on Hanna's motion for preliminary injunction. The Court appointed Mr.

PAGE 11 – OPINION AND ORDER

Chavez for the limited purpose of the preliminary injunction hearing, and Mr. Chavez's service is now complete. (*See* ECF No. 50.) If Mr. Chavez (or associated counsel David Sugerman) would like to continue as counsel of record for Hanna to assist him with bringing any alleged violations of the preliminary injunction to the Court's attention, counsel may file a general notice of appearance. Mr. Chavez's initial appointment as pro bono counsel does not disqualify Hanna from seeking a prevailing party fee award under 42 U.S.C. § 1988 at the conclusion of the case, if appropriate, including for the time Mr. Chavez spent in connection with the preliminary injunction hearing.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Hanna's motion for a preliminary injunction (ECF No. 24), and ORDERS Defendants to comply with and enforce ODOC's mask policy at TRCI.[5] This order will expire in ninety (90) days unless extended, superseded, or vacated by a subsequent order. Hanna is not required to post security.

**IT IS SO ORDERED.**

DATED this 21st day of March, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[5] Although Oregon's statewide mask mandate has now lifted, Defendants acknowledge that a mask mandate continues to apply inside most areas of Oregon's correctional institutions. (Defs.' Supp. Br. in Opp'n to Mot. for Prelim. Inj., ECF No. 66, at 4.) The Court understands that ODOC is preparing to phase out its mask mandate. (Ray Decl., Ex. 1 at 1-2.) The preliminary injunction shall apply to whatever ODOC mask policy is in effect at TRCI during this ninety-day period.